IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | | |
|---|---|---|
| JAMES R. SZOKE, *et al.*, | ) | CASE NO. 1:03CV1628 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Judge Solomon Oliver, Jr.[1] |
| | ) | |
| UNITED PARCEL SERVICE OF | ) | |
| AMERICA, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | MEMORANDUM OF OPINION |

On May 30, 2006, the Defendants filed a Partial Motion For Summary Judgment (Docket No. 64). Also on May 30, 2006, the Plaintiffs filed a Memorandum in Support of Judgment for Cecilia Miller (Docket No. 65), which substantively constitutes a cross-motion for summary judgment. In addition, the Plaintiffs have filed a Motion To Strike the Defendants' motion (Docket No. 66).

For the following reasons, the Defendants' Partial Motion For Summary Judgment is

---

[1] This case originally was assigned to Judge John M. Manos, who passed away on July 6, 2006. Pursuant to the protocol adopted by the judges of this Court in General Order 2006-21, this case has been reassigned to Judge Solomon Oliver, Jr.

GRANTED, and the Plaintiffs' Memorandum In Support of Judgment and Motion To Strike are DENIED.

## I. FACTS

### A. Procedural History

The named Plaintiffs are nineteen present and former clerical employees of Defendant United Parcel Service of America, Inc. ("UPS"). Pursuant to Fed. R. Civ. P. 23, the Plaintiffs also seek class action certification of a class comprising allegedly similarly situated former and current UPS employees. The other Defendants (collectively referred to as the "Plan Administrators") are the various administrators of plans providing retirement benefits for certain UPS union employees.[2]

On July 31, 2003, the Plaintiffs filed their original Complaint, which was amended on October 27, 2003. Although the Amended Complaint itself is short on specifics, the gravamen of the basis for the action is that on September 1, 1995, the Defendants improperly made material changes to the Plaintiffs' retirement benefits without their consent. The Plaintiffs allege that the changes reduced monthly benefit payments due certain current and future retirees.

Count One of the Amended Complaint asserts that the Plan Administrators failed to provide the Plaintiffs with adequate information regarding the change in their retirement benefits, in violation of Section 502(c) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(c). Count Two seeks enforcement and clarification of the Plaintiffs' rights under the UPS retirement plans pursuant to ERISA Section 502(a)(1)(B), 29

---

[2] The Plan Administrator Defendants are the UPS Retirement Plan, the Administrative Committee of the UPS Retirement Plan, the UPS Pension Plan, and the Board of Trustees of the UPS Pension Plan.

U.S.C. § 1132(a)(1)(B). Count Three alleges that all Defendants breached fiduciary duties owed to the Plaintiffs by failing to provide required information, and by altering the Plaintiffs' retirement benefits without consent. Count Four alleges that the changes to retirement benefits constitute age discrimination in violation of the Age Discrimination in Employment Act of 1967, as amended ("ADEA"), 29 U.S.C. § 621 *et seq*. The current motions relate only to the ERISA counts, Counts One, Two, and Three.

At early conferences in the case, the parties informed the Court that only one named Plaintiff, Cecilia Miller, was actually retired. Therefore, she was the only Plaintiff for whom precise benefits could be calculated. In addition, the parties agreed that the method or formula for her benefits determination would be representative of all retirees, present or future, so the Court deemed it most efficient to determine the ERISA claims as to her first. Plaintiff Miller, however, had not exhausted administrative remedies under the plans as required by ERISA. Accordingly, on May 25, 2004, the Court stayed proceedings pending exhaustion of Miller's administrative remedies.

During the administrative proceedings, Miller claimed that her monthly retirement benefit should be $2190.54. On August 26, 2005, the Administrative Committee for the Plan Administrators ruled that the Plaintiff is entitled to only $1750.00 per month. (Admin. Rec. at 53-55, 73-76.) The Plaintiff took an administrative appeal. On November 15, 2005, the Administrative Committee rejected her appeal and confirmed its prior decision. (Admin. Rec. at 1-3.) No further appeals were taken.

On May 4, 2006, the Court instructed the parties to brief the validity of the administrative decision. The current motions followed.

B. Facts From the Administrative Record

The following facts were elicited during the administrative proceedings. Plaintiff Cecilia Miller was employed by UPS for approximately 29 years. (Admin. Rec. at 81.) During her tenure, she was a member of a union, the Local 407 branch of the International Brotherhood of Teamsters, and therefore subject to the terms of numerous collective bargaining agreements. The agreements included a National Master governing UPS Teamster employees company-wide, and an Ohio Rider specifically for Ohio employees like the Plaintiff. (See, e.g., Admin Rec. at 12-25, 113-Nation Master for August 1, 1993 through July 31, 1997; Admin. Rec. at 29-40 and 115-126, Ohio Riders for August 1, 1993 through July 31, 1997, August 1, 1997 through July 31, 2002, and August 1, 2002 through July 31, 2008.)

The various agreements and riders governed the terms and conditions of Plaintiff Miller's employment, including her retirement benefits. The parties agree that prior to September 1, 1995, the Plaintiff's retirement benefits stemmed from a plan referred to as the UPS Retirement Plan. The UPS Administrative Committee, in ruling on the current benefits claim, states that on September 1, 1995, Plaintiff Miller (and all similarly situated employees) was transferred into a different retirement plan, referred to as the UPS Pension Plan. The Administrative Committee ruled that considering the 1995 enrollment into the UPS Pension Plan, the Plaintiff's total benefit would be $1750.00 per month. (Admin. Rec. at 53-54.)

The Plaintiff disputes the propriety of her enrollment into the UPS Pension Plan, and she claims that her benefits should be calculated solely using the formulas under the UPS Retirement Plan. She obtained a benefits calculation performed by an outside actuarial expert, Samuel D. Harris of the Samuel Harris Co. The Plaintiff offered into evidence Harris' report in which he

calculated her benefit to be $2190.54 under the UPS Retirement Plan. He assumed that the UPS Pension Plan did not apply. (Admin. Rec. at 54, 75-78.)

The Administrative Committee rejected the Plaintiff's argument that the UPS Retirement Plan solely determines her benefits. Regarding the change to the UPS Pension Plan, the Administrative Committee stated:

> This change to the Pension Plan occurred after UPS made a presentation to the Teamsters on August 25, 1995. Evidence of the agreement to move Ohio Rider employees to the Pension Plan is implicit in the Ohio Rider agreements <u>subsequent to that time</u>.

(Admin. Rec. at 54, emphasis added.) Apparently, therefore, even the Administrative Committee recognizes that there is no document dated September 1, 1995 that specifically evidences the change to the Pension Plan, and the Court also cannot find such a document. The Administrative Committee relied upon "subsequent" documents.

The Court notes the following evidence in support of the committee's finding that, pursuant to agreement with the union, the Plaintiff and her coworkers were enrolled in the UPS Pension Plan as of September 1, 1995.

First, the Administrative Committee references a presentation to Teamsters officials regarding the Pension Plan on August 25, 2005. On October 13, 2005, a presentation allegedly was made to the rank-and-file employees. In the administrative record, there is a document that appears to be a presentation regarding the Pension Plan, entitled "Repackaging Your Retirement Benefits". (See Admin. Rec. at 41-42.) This document possibly is the presentation of August 25, 1995, but the document is not dated and therefore cannot be considered by the Court.

However, the visuals from the presentation dated October 13, 2005, made to all effected employees, are indeed included in the administrative record. (Admin. Rec. at 299-317.) Plaintiff

-5-

Miller denies attending the presentation.

In addition, on December 21, 1995, the UPS Board of Directors executed "AMENDMENT NO. 20 TO THE UPS PENSION PLAN". (Admin. Rec. at 145-46.) The amendment states in relevant part:

> WHEREAS, it is desired to amend the plan further to allow full-time employees represented for purposes of collective bargaining by the International Brotherhood of Teamsters – Ohio Rider to participate in the Plan <u>effective September 1, 1995</u>.
>
> NOW THEREFORE, pursuant to the authority vested in the Board of Directors by Section 10.1 of the Plan, the UPS Pension Plan is hereby amended as follows:
>
> 1. A new Paragraph I and Table I are added to Exhibit I as follows:
>
>> I. The immediately following Table I sets forth the schedule of benefits applicable to full-time Participants represented for purposes of collective bargaining by the International Brotherhood of Teamsters – Ohio Rider employed by the Employer or a Related Employer <u>on or after September 1, 1995.</u>

(Admin. Rec. at 145-46, emphasis added.)

The Administrative Committee also relied on language in subsequent agreements that implicitly acknowledges the change to the Pension Plan. On January 19, 1996, UPS and Local 407 executed a supplemental agreement which states: "Employees will remain in a United Parcel Service Health & Welfare and <u>Pension Plan</u> unless dictated otherwise by contract language (including the Ohio Rider)." (Admin. Rec. at 28A, emphasis added.[3]) Similarly, a Letter of Understanding, which is dated September 15, 1997 and amends the applicable Ohio Rider,

---

[3] By clerical error, this page of the administrative record is not numbered, so the Court refers to the page as "28A" for convenience.

states:

> In lieu of this agreement, it is understood, the Employer (UPS) will improve the present Pension Plan of the full-time union clerks in the UPS Pension Plan from a maximum plan benefit of fifteen hundred dollars ($1500) per month to seventeen hundred and fifty dollars ($1750) per month.

(Admin. Rec. at 33, emphasis added.) The Administrative Committee interpreted these provisions as recognition of the switch to the Pension Plan.

There also is pre-litigation correspondence stating that Plaintiff Miller was enrolled in the Pension Plan. A letter to her from the plan's Board of Trustees, dated August 10, 1998, states: "You [Cecilia Miller] became a participant in the UPS Pension Plan on September 1, 1995, having met eligibility requirements." (Admin. Rec. at 43.) The Plaintiff made no contemporaneous objection, and this lawsuit was not filed until July 31, 2003.

Based on this evidence, the Administrative Committee concluded that, as a result of collective bargaining through the Teamsters and its Local 407, Plaintiff Miller became subject to the UPS Pension Plan as of September 1, 1995. Accordingly, her monthly benefit is $1750.00.

## II. LAW AND ANALYSIS

### A. Motion To Strike

As a threshold matter, the Court rules on the Plaintiffs' Motion To Strike (Docket No. 66) the Defendants' Partial Motion For Summary Judgment. Tellingly, despite this motion, Plaintiff Miller also seeks judgment on her ERISA claims. Although she has entitled her brief a "Memorandum in Support of Judgment", in substance it is a cross-motion for summary judgment.

In the Minutes for the conference of April 4, 2006 (Docket No. 61), the Court instructed

the parties in part to "file briefs on the validity of the administrative decision as to Plaintiff Cecilia Miller". The Court concludes that the Defendants' Partial Motion For Summary is consistent with this instruction.

The Plaintiffs assert that a summary judgment motion is premature because it forecloses additional discovery on Miller's ERISA claims. However, a review of the ERISA claims is confined to the administrative record. Moon v. Unum Provident Corp., 405 F.3d 373, 378 (6th Cir. 2005); Killian v. Healthsource Provident Administrators, Inc., 152 F.3d 514, 522 (6th Cir. 1998). Peruzzi v. Summa Medical Plan, 137 F.3d 431, 433-34 (6th Cir. 1998); Yeager v. Reliance Standard Life Insurance Co., 88 F.3d 376, 381 (6th Cir. 1996); Wilkins v. Baptist Healthcare System, Inc., 150 F.3d 609, 616 (6th Cir. 1998). Furthermore, determination of ERISA claims on summary judgment is appropriate if the Court restricts its analysis to the administrative record. University Hospitals of Cleveland v. Emerson Electric Co., 202 F.3d 839, 845 n. 2 (6th Cir. 2000); Wilkins, 150 F.3d at 616-17.

Therefore, the Plaintiffs are not entitled to additional discovery on Miller's ERISA claims because the analysis is limited to the administrative record. Summary judgment is thus an appropriate procedural mechanism to review these claims. Accordingly, the Plaintiffs' Motion To Strike (Docket No. 66) is denied.

B. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The party moving for summary judgment bears the initial burden of production under Rule 56. The burden may be satisfied by presenting affirmative evidence that negates an element of the non-movant's claim or by demonstrating "an absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

If the movant meets this burden, the non-movant must "set forth the specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The substantive law identifies which specific facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To avoid summary judgment, the non-movant must "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

"The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 256 (citing Adickes v. Kress & Co., 398 U.S. 144, 158-59 (1970)). However, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "[T]he mere existence of some alleged factual disputes between the parties will not defeat an otherwise properly supported motion" for summary judgment. Anderson, 477 U.S. at 247-48.

The summary judgment standard must be applied considering the specific standard of review of administrative decisions under ERISA. Under the Pension Plan and Retirement Plan, the determination of eligibility and benefits is vested within the discretion of the plans' administrators. The plan documents state that the administrators have "the exclusive right to interpret the Plan and decide any matters arising in the administration and operation of the Plan,

-9-

and any interpretations and decisions so made shall be conclusive and binding on all persons." (See UPS Pension Plan Section 11.3; UPS Retirement Plan Section 9.3.) When benefits decisions are within the discretionary authority of plan administrators, such decisions are entitled to deference and will be upheld unless arbitrary and capricious. University Hospitals of Cleveland v. Emerson Electric Co., 202 F.3d 839, 845 (6th Cir. 2000); Peruzzi v. Summa Medical Plan, 137 F.3d 431, 433 (6th Cir. 1998).[4]

A benefits decision is not arbitrary and capricious if it is rational in light of the plan's provisions. When one can offer a reasoned explanation based on evidence from the administrative record, the outcome is not arbitrary or capricious. Moon v. Unum Provident Corp., 405 F.3d 373, 378 (6th Cir. 2005). University Hospitals, 202 F.3d at 846; Yeager v. Reliance Standard Life Insurance Co., 88 F.3d 376, 381 (6th Cir. 1996); Perry v. United Food and Commercial Workers District Unions 405 and 442, 64 F.3d 238, 242 (6th Cir. 1995). However, when a plan is ambiguous and subject to more than one interpretation, any ambiguity is construed against the plan administrators as the drafting parties. University Hospitals, 202 F.3d at 847. When the ERISA standard is applied in the context of a motion for summary judgment, a court must decide whether a genuine issue of material fact exists as to whether the administrative decision was arbitrary or capricious. Killian v. Healthsource Provident Administrators, Inc., 152 F.3d 514, 520 (6th Cir. 1998).

### C. Merits of the Administrative Decision

In Count One of the Amended Complaint, the Plaintiffs assert that the Plan Administrators failed to provide adequate information in violation of ERISA Section 502(c). In

---

[4] The Plaintiffs do not dispute that this deferential standard applies.

Count Two, the Plaintiffs seek enforcement and clarification of benefits under ERISA Section 502(a)(1)(B). In this case, both counts depend upon whether the changes to the retirement benefits were made pursuant to collective bargaining with the union. Plaintiff Miller claims she was transferred to the UPS Pension Plan without adequate information and without her consent. Because she was part of a union, "consent" in this case is not viewed from her personal standpoint, but rather is analyzed in the context of the representation. If her union agreed, she is bound by the agreement as are all other employees in the union.

Ordinarily, when a collective bargaining agreement exists, a company may not unilaterally act with respect to any mandatory subject of bargaining. Loral Defense Systems-Akron v. NLRB, 200 F.3d 436, 449 (6th Cir. 1999), citing, NLRB v. Plainville Ready Mix Concrete Co., 44 F.3d 1320, 1325 (6th Cir.), cert. denied, 516 U.S. 974 (1995); see also NLRB v. Katz, 369 U.S. 736, 743 (1962). The Plaintiffs argue that the Katz standard no longer applies because the case pre-dates ERISA. As Loral and Plainville demonstrate, however, Katz still applies when benefits plans are negotiated through collective bargaining.

Under the deferential standard of review, the Administrative Committee's conclusion will be upheld unless it is arbitrary and capricious. Therefore, Plaintiff Miller is not entitled to relief if her transfer to the UPS Pension Plan was a result of collective bargaining as evidenced in the administrative record. The Court concludes that sufficient evidence exists to support the Administrative Committee's conclusion.

There is clear evidence that the change in retirement benefits was presented to the employees on October 13, 2005. (Admin. Rec. at 299-317). Miller alleges that she did not attend this presentation personally, but that is irrelevant in view of her union representation. The

-11-

change in retirement benefits is reflected in subsequent Ohio Riders. (Admin. Rec. at 29 and 35). The change also is reflected in the supplemental agreement between UPS and Local 407 dated January 19, 1996 (Admin. Rec. at 28A), and the Letter of Understanding dated September 15, 1997 (Admin. Rec. at 33). In addition, the change is reflected in correspondence to Plaintiff Miller personally, dated August 10, 1998. (Admin. Rec. at 43.) There is no evidence that Miller ever raised objections prior to the filing of this lawsuit.

Perhaps most importantly, on December 21, 1995, the change in retirement benefits was adopted by resolution of the UPS Board of Directors. The Board resolution explicitly states that the changes were effective as of September 1, 1995. (Admin. Rec. at 145-46). Under Loral and Plainville, supra, the UPS Board could not have taken such action had the union not agreed through collective bargaining, and yet there is no evidence that either Local 407 or the International Brotherhood of Teamsters objected.[5] This resolution by itself is dispositive that the change in retirements benefits was legal and the result of collective bargaining.

For the foregoing reasons, the Court concludes that the decision of the Administrative Committee is not arbitrary and capricious. Accordingly, the Defendants are entitled to summary judgment on Counts One and Two as to Plaintiff Miller.

Count Three asserts that the Defendants breached fiduciary duties owed the Plaintiffs for the conduct alleged in Counts One and Two, (i.e., failing to provide adequate information and transferring the Plaintiffs to the UPS Pension Plan without consent). Although the parties have not separately briefed Count Three, this count fails for the same reasons as Counts One and Two.

---

[5] Originally, Local 407 was a named Defendant, but on October 27, 2003, the Plaintiffs voluntarily dismissed the union.

Because the changes in retirement benefits resulted from collective bargaining, there is no breach of fiduciary duty by the Defendants.

In addition, the Court lacks subject matter jurisdiction over Count Three because it is preempted. The Court has an obligation to consider its own subject matter jurisdiction *sua sponte* when the issue is not raised by the parties. Days Inns Worldwide, Inc. v. Patel, 445 F.3d 899, 904 (6th Cir. 206); Ohio v. Doe, 433 F.3d 502, 506 (6th Cir. 2006).

By its terms, Count Three raises a common law claim for breach of fiduciary duties. The count contains no independent federal statutory reference.[6] Any state laws that "relate to any employee benefit plan" established under ERISA are preempted. 29 U.S.C. § 1144(a). This provision includes common law claims brought under state contract or tort law. Pilot Life Insurance Co. v. Dedeaux, 481 U.S. 41, 47-48 (1987); Metropolitan Life Insurance Co. v. Taylor, 481 U.S. 58, 62 (1987). The phrase "relates to" is broad and encompasses any claims that have a connection to or reference an ERISA plan. New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co., 514 U.S. 645, 655-56 (1995). Virtually all state law claims for benefits are preempted. Marks v. Newport Credit Group, Inc., 342 F.3d 444, 452 (6th Cir. 2003).

Count Three clearly meets this standard and is thus preempted. Accordingly, the

---

[6] Claims for breach of fiduciary duties under ERISA are governed by 29 U.S.C. §§ 1104 and 1109, which are not specifically referenced anywhere in the Amended Complaint. Furthermore, ERISA statutory claims for breach of fiduciary duties provide for relief only to the plan itself, not individual participants, and a fiduciary who breaches such duty reimburses the plan. Marks v. Newport Credit Group, Inc., 342 F.3d 444, 454 (6th Cir. 2003); Weiner v. Klais and Company, Inc., 108 F.3d 86, 91-92 (6th Cir. 1997). Such a claim would not be appropriate here because the Plaintiffs seek primarily individual recovery, and not reimbursement to the plan.

Defendants are entitled to summary judgment on Count Three as to Plaintiff Miller.

III. CONCLUSION

For the foregoing reasons, the Defendants' Partial Motion For Summary Judgment (Docket No. 64) is GRANTED, and the Plaintiffs' Memorandum In Support of Judgment (Docket No. 65) and Motion To Strike (Docket No. 66) are DENIED. Accordingly, the Court hereby grants the Defendants summary judgment on Counts One, Two, and Three as to Plaintiff Cecilia Miller.

Given the parties' joint representation that Plaintiff Miller's claims are representative as to all Plaintiffs, the Court hereby issues an Order To Show Cause as to why summary judgment should not be granted against all Plaintiffs on Counts One, Two, and Three. The Plaintiffs have thirty (30) days to respond to this Order To Show Cause.

IT IS SO ORDERED.

Issued: September 26, 2006        s/ *Solomon Oliver, Jr.*
                                                 UNITED STATES DISTRICT JUDGE